

Rights Behind Bars
1800 M St NW, Front 1 #33821,
Washington, DC 20033

**JULY 15, 2025**

Joel Anderson
Interim Director
South Carolina Department of Corrections
P.O. Box 21787
Columbia, SC 29210
anderson.joel@doc.sc.gov
803-896-8555

Salley Elliott
Deputy Director of Legal Compliance
South Carolina Department of Corrections
P.O. Box 21787
Columbia, SC 29210
elliott.salley@doc.sc.gov
803-896-8508

Stephen Duncan
Warden, Broad River Correctional Institution
4460 Broad River Road,
Columbia, SC 29210
duncan.stephen@doc.sc.gov

Daniel Mullins
Deputy Director of Medical Services
South Carolina Department of Corrections
P.O. Box 21787
Columbia, SC 29210
Daniel.mullins@doc.sc.gov
MedicalConcerns@doc.sc.gov
803-896-8184

Office of the Ombudsman
South Carolina Department of Corrections
P.O. Box 21787
Columbia, SC 29210
Ombudsman@doc.sc.gov

Exhibit-A
Pages- 1 - 4

Dear Interim Director Anderson, Deputy Director Elliott, Warden Duncan, Deputy Director Mullins, and Ombudsman's Office:

I am writing to follow up on our correspondence from June 27, 2025 regarding Charles Carter (396340) and the continued rights violations he is experiencing in your custody at the Broad River Correctional Facility. I am an attorney with Rights Behind Bars (RBB), a national organization that brings litigation regarding conditions in prisons, jails, and immigration detention centers on behalf of those incarcerated.

I spoke with Mr. Carter last week on Wednesday July 9, 2025, where he informed our office that after he was stabbed on June 26, 2025, he was attacked again later that week, is being punished in segregation, is deprived of commissary and contact with his loved ones, and is receiving grossly inadequate medical care and disability accommodations. Mr. Carter experienced a serious trauma when he was stabbed in his pod. He was scared and vulnerable as no staff were present while he banged on the door for help. Mr. Carter has experienced alarming symptoms of post-traumatic stress disorder since his attack. Yet, the Department has continued to put Mr. Carter at risk, violate his constitutional rights to health and safety, and punish him without justification.

First, our office is outraged that the prison has *still* failed to place Mr. Carter in protective custody where he can be safe from risk of serious harm, despite the recent violent attack on Mr. Carter and the ample notice of his risk of harm. Mr. Carter has formally requested to be placed in protective custody since April 2025 and RBB reiterated this request in our most recent letter. After a violent attack, Mr. Carter continues to be denied placement in protective custody, where he would be safe from individuals who have threatened and assaulted him.

Instead of protecting Mr. Carter, his security classification has been raised and he has been placed in the RHU—a unit designed for punishment through isolation. Our understanding is that Mr. Carter's attacker has been allowed to remain in the general population while only Mr. Carter faces severe punishment, even though he is the victim of the attack. The prison has also removed his commissary, prohibited his ability to speak with loved ones, and restricted his out of cell time.

Because he was the victim of an assault, punishing Mr. Carter with the RHU is utterly inappropriate. Placing a vulnerable incarcerated individual who repeatedly requests protective custody into administrative segregation may run afoul of the Eighth Amendment's prohibition on deliberate indifference to a known risk of harm. *Rizer v. Gillispie*, 869 F.2d 594 (4th Cir. 1989) (finding plausible deliberate indifference where prisoner reported death threats to officials, requested protective custody, but was placed in administrative segregation); *Makdessi v. Fields*, 789 F.3d 126, 130 (4th Cir. 2015) (considering repeated grievances and rejected requests for protective custody in deliberate indifference finding). The prison is legally obligated to take reasonable steps to ensure Mr. Carter's health and safety. **Mr. Carter requires closed custody protective status and a single cell or a transfer to another prison that can adequately protect him.**

Second, our office is gravely concerned about the facility's latest failure to protect Mr. Carter from assault from the same attacker who stabbed him on June 26th. On June 30, 2025, Mr. Carter was left in an unlocked holding cell in the medical unit, waiting for his wounds to be redressed. Prison officials—

fully aware of the previous attack and the perpetrator of it—allowed Mr. Carter's assailant to the medical unit. *Once again*, no staff were present, and Mr. Carter was physically injured by his attacker in an altercation four days after his initial attack. **The facility again failed to protect Mr. Carter and put him at serious risk of harm. Given months of threats and two violent assaults on Mr. Carter, we request that he be immediately transferred to another facility or returned to Wyoming, as Broad River has been unable to take constitutionally adequate steps to protect him. We also reiterate that he should be placed in protective custody until he can be successfully transferred.**

Third, Mr. Carter has received inadequate medical care, leading to severe pain and other complications. Mr. Carter's injuries from the June 26th stabbing were severe: he was cut all over his body, his left wrist was bleeding profusely, and he had stab wounds on the left side of his chest and his back. Officers minimized and misrepresented the situation in incident reports, describing his injuries as "superficial" even though many of his stab wounds required stitches, and stating that both individuals were perpetrators when Mr. Carter was attacked. Instead of being taken to a hospital, Mr. Carter received substandard care in the medical unit which resulted in stitches that were botched. Medical officers left him bleeding for days, in substantial pain, and with a possible infection. Medical staff have continued refusing to send Mr. Carter to an outside hospital, although his wrist continues to hurt and shows signs of infection.

Incarcerated people like Mr. Carter have the constitutional right to adequate medical treatment, and deliberate indifference to their serious medical needs is unconstitutional. *Formica v. Aylor*, 739 Fed. Appx. 745 (4th Cir. 2018) (finding nurse constitutionally liable for inaction and denial of prompt treatment in the face of substantial risk to prisoner's health); *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (deliberate indifference where officials ignored basic medical needs and postponed treatment). **We request that the facility promptly provide Mr. Carter with adequate medical care and send him to an outside provider to treat his stab wounds.**

Finally, we are concerned that while Mr. Carter has been held in the RHU, his disability accommodation which requires him to be placed on the ground floor has been ignored, and he remains on the top tier in spite of his condition. Incarcerated people have the right to reasonable disability accommodations in prison under the Americans with Disabilities Act (ADA). State prisons' refusal to implement necessary accommodations is unlawful under the ADA. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) (ADA prohibits discrimination against individuals with disabilities in state prisons). **Mr. Carter must be housed on the ground floor in accordance with his disability accommodation and medical needs.**

After speaking with Mr. Carter, we are alarmed at the Department's continued disregard for his well-being. **We urge you to respect Mr. Carter's basic constitutional rights to safety, due process, and adequate medical treatment. The facility has failed to adequately protect him from attack leading to him being stabbed on June 26th, failed to protect him from another physical altercation on June 30th, punished him with isolation instead of placing him in protective custody, and failed to meet his basic medical and disability needs. We urge you to remedy the above violations and/or meet with us to develop solutions that would respect Mr. Carter's rights. Given the continued urgency of this matter, we request a response regarding the methods you plan to remedy these issues by July 22,**

2025.

**Furthermore, as the attacks on Mr. Carter were likely captured on the video cameras in the facility, Mr. Carter requests your immediate action to preserve electronically stored information that may contain evidence important to document the attacks.** This would especially include all video surveillance footage between the dates of June 26, 2025 to June 30, 2025 (the dates of the first attack up until the date of the second altercation). Special attention should be paid to all the housing units he was placed in during this time, the medical units, and all areas Mr. Carter was taken between those dates. This notice applies to Broad River's on- and off-site computer systems and removable electronic media plus all computer systems, services, and devices (including all remote access and wireless devices) used for your facility's overall operation, but especially video surveillance of the facility. This also includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, voice recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data that contains evidence of the attack on Mr. Carter on June 26, 2025 and June 30, 2025, and communications by prison officials about those attacks and the treatment of Mr. Carter thereafter. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, codes, keys and other support information needed to fully search, use, and access the electronically stored information must also be preserved. Special attention should be given to any computers and devices of officers, supervisors, and employees who oversee retaining, organizing, copying, or destroying video surveillance.

We look forward to hearing from you soon.

Sincerely,

*/s/Amaris Montes*

Amaris Montes, Esq.
Rights Behind Bars
1800 M St NW, Front 1 #33821,
Washington, DC 20033
amaris@rightsbehindbars.org
(Office): (202) 455-4399
(Cell): (202) 627-0175

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS**
**OFFICE OF GENERAL COUNSEL**
**RESPONSE TO INMATE CORRESPONDENCE**

TO:	Charles Carter

SCDC #	396340

INSTITUTION:	BRCI

FROM:	Office of General Counsel

DATE:	May 8, 2025

RE:	Inmate Correspondence

Mr. Carter:

The Office of General Counsel has received your letter. Mr. Carter, legal requests are requests that are related to areas within the Office of General Counsel's responsibility. The PAN list, interstate compact, conditions of confinement, Wi-Fi, and requests to transfer are not the responsibility of the Office of General Counsel.

Your safety concerns and allegations of being denied access to the courts are being forwarded to Warden Duncan.

In the future, please use the Automated Request to Staff Member system to submit requests.

Administrative Coordinator
Office of General Counsel

Exhibit B